**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) ) | |
| **Plaintiff,** | ) | **Civil Action No. 3:11-cv-00267-bbc** |
| **and** | ) ) | |
| **LORI DUNSE, MYLINDA SHEA ANN BROWN, and SAMANTHA GAY,** | ) ) | |
| **Plaintiff-Intervenors** | ) ) | |
| **v.** | ) ) | **EEOC'S MEMORANDUM OF** |
| **MISSOULA MAC, INC.,** **d/b/a McDONALD'S RESTAURANTS,** | ) ) | **LAW IN OPPOSITION TO** **DEFENDANT MISSOULA MAC,** |
| | ) | **INC.'S MOTION FOR PARTIAL** |
| **Defendant.** | ) ) | **SUMMARY JUDGMENT** |

On March 13, 2012, defendant Missoula Mac, Inc. ("MMI") moved for partial summary judgment. It did not ask for dismissal of the EEOC's claims about Plaintiff-Intervenors Lori Dunse, Samantha Gay, and MyLinda Brown. Rather, it seeks partial summary judgment on the EEOC's claims about certain MMI female employees similarly situated to the Plaintiff-Intervenors. The motion has no factual or legal merit. MMI violated Title VII of the Civil Rights Act of 1964 by allowing sexual harassment against its employees and by retaliating against those who complained about it. Its failure to take any steps to correct or prevent sexual harassment at its Reedsburg restaurant allowed the harassment to continue in Reedsburg and spread to the Lake Delton restaurant.

## FACTS

Facts material to the EEOC's opposition to MMI's motion are set out in the EEOC's Proposed Findings of Fact in Opposition to Defendant Missoula Mac, Inc.'s Motion for Summary Judgment ("EPFF") submitted in accordance with the Court's Preliminary Pretrial

Conference Order and Procedure to be Followed on Motions for Summary Judgment. They will be addressed as appropriate in the Argument section of this brief.

## ARGUMENT

### I.   Summary Judgment Standards

Summary judgment may be granted only when "there is no genuine issue as to any material fact and… the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Lawson v. CSX Transp., Inc.,* 245 F.3d 916, 922 (7th Cir. 2001).  Here, many key facts are genuinely in dispute, and the law does not entitle MMI to judgment.

On summary judgment, a court "must draw all reasonable inferences in favor of the non-moving party, and it may not make credibility determinations or weigh the evidence…. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

### II.   MMI Ended the Conciliation Process by Refusing the EEOC's Proposal Request.

The EEOC has a duty to conciliate in good faith before suing; conciliation is a flexible and responsive process which necessarily differs from case to case.  *EEOC v. Dial Corp.*, 156 F. Supp. 2d 926, 940 (N.D.Ill. 2001) ("*Dial*"), citing *EEOC v. First Midwest Bank, N.A.*, 14 F. Supp. 2d 1028, 1031 (N.D.Ill. 1998) ("*First Midwest*"); *EEOC v. Menard, Inc.*, No. 08-0655-DRH, 2009 WL 1708628, at *1 (S.D.Ill. Jun. 17, 2009) ("*Menard*"), citing the same.  Conciliation agreements are voluntary contracts containing terms upon which the employer, the employee, and the EEOC agree; nothing in Title VII compels any of these parties to reach final agreement.  *EEOC v. Liberty Trucking Co.*, 695 F.2d 1038, 1041 (7th Cir. 1982).

The EEOC may make a sufficient initial effort without undertaking exhaustive investigations or proving discrimination to the employer's satisfaction so long as it makes a sincere and reasonable effort to negotiate by providing an adequate opportunity to respond to all charges and negotiate possible settlements.  *Dial*, 156 F. Supp. 2d at 940, citing *First Midwest*, 14 F. Supp. 2d at 1031*; Menard*, 2009 WL 1708628, at *1, citing the same*.*  Courts' role in reviewing the conciliation process is limited; the form and substance of the EEOC's conciliation proposals are within its discretion and, thus, immune from judicial second-guessing.  *Dial*, 156 F. Supp. 2d 940, citing *First Midwest*, 14 F. Supp. 2d at 1031*; Menard*, 2009 WL 1708628, at *1, citing the same*.*

**A. MMI Refused the EEOC's Good Faith Request for Conciliation Terms**

Here, the EEOC in good faith provided MMI with an opportunity to negotiate a possible settlement by asking MMI to submit a conciliation proposal.  (EPFF, ¶¶ 3, 4).  MMI finds fault with this process because it felt burdened to "assume the garb of a supplicant."  (MMI Brief at p. 7).  However, courts have found this process appropriate.  In *Menard*, the Southern District of Illinois held this process properly met the EEOC's statutory duty to conciliate.  *Menard*, 2009 WL 1708628, at *2.  In *Dial*, the Northern District of Illinois held that this process satisfied the EEOC's "statutory duty to make 'a sincere and reasonable effort to negotiate.'"  *Dial*, 156 F. Supp. 2d at 940, citing *First Midwest*, 14 F. Supp. 2d at 1031, quoting *EEOC v. Prudential Fed. Sav. & Loan Ass'n*, 763 F.2d 1166, 1169 (10th Cir. 1985).  Like those courts, the Court here should hold that the EEOC met its burden to conciliate in good faith.

In *Menard*, the EEOC sent a Letter of Determination with an invitation to conciliate.  *Menard* at *2.  The defendant made an initial conciliation proposal, a "take it or leave it" offer that did not factor the EEOC's likelihood of success on the merits if it were to litigate the case or

offer any relief for compensatory or punitive damages.  *Id.*  The EEOC rejected this offer and did not make a counter-offer.  *Id*.  The court rejected defendant's argument that the EEOC did not conciliate in good faith.  *Id*.

Here, the EEOC invited MMI to conciliate specifically by proposing terms for a conciliation agreement within 14 days.  (EPFF, ¶¶ 3, 4). Instead of proposing terms, MMI attacked the EEOC's investigation and its determination.  (EPFF, ¶¶ 5-7).  Nevertheless, MMI claimed to be "willing to participate in a conciliation effort."  (EPFF, ¶ 5).  But it would not submit a proposal.  (EPFF, ¶ 6).  To move the conciliation process along, the EEOC procured a demand from Plaintiff-Intervenors' counsel and presented it to MMI.  (EPFF, ¶¶ 8, 9).  MMI still did not submit a counter-proposal.  (EPFF, ¶¶ 10-19).  MMI's counsel claimed that he had forwarded the demand to his "contacts," that the demand was "extremely high," and that the facts supporting the EEOC's determination were "extremely weak."  (EPFF, ¶¶ 11-12).  But he did not submit a proposal.  (EPFF, ¶ 13).  Unable to secure a conciliation proposal from MMI, the EEOC determined that its efforts to conciliate this case failed.  The *Menard* court held that the EEOC had conciliated in good faith when it rejected a take-it-or-leave-it offer.  At least the *Menard* defendant made an offer.  Here, MMI has failed and refused to take that minimal first step, instead protesting that the EEOC's demand was "extremely high."

In *Dial*, a class action suit, the EEOC also sent the defendant a Letter of Determination with an invitation to conciliate by submitting a proposal.  *Dial* at 941.  Unlike MMI, the *Dial* defendant submitted a proposal featuring some training and policy review but no monetary relief. *Id.*  The EEOC countered with a demand which included the defendant's proposed terms, $300,000 for the charging party, and additional terms.  *Id.*  The defendant countered with a proposal featuring $5,000 for the charging party plus its original terms only.  *Dial* at 942.  The

charging party rejected the monetary offer, and the EEOC notified the defendant that conciliation efforts had failed. *Id.* The Court held that "the EEOC did, indeed, attempt to conciliate with Dial pursuant to its statutory obligation." *Id.*

Here, the EEOC requested a settlement proposal which MMI never provided. Rather, MMI attacked the EEOC's determination at every opportunity. (EPFF, ¶¶ 7, 11, 15). Then, when the EEOC communicated its demand, MMI deemed it "extremely high." Unlike the *Dial* defendant, however, MMI offered neither a proposal nor a counter-proposal. Its problem with the EEOC's conciliation here boils down to its dislike of the process.

### B. MMI Challenges the EEOC's Chosen Conciliation Process, Not Its Efforts

Seemingly, MMI challenges every part of the investigation and conciliation process, although it apparently does not claim that the EEOC's efforts with respect to the Plaintiff-Intervenors were insufficient. It claims that the EEOC gave it no notice that the investigation included charges of sexual harassment other than the Plaintiff-Intervenors' and that the determinations contained conclusory statements bereft of facts or reasoning. However, the Letters of Determination all include notice that the EEOC found reasonable cause to believe a class of female employees was subjected to sexual harassment. (EPFF, ¶ 3). To the extent that MMI asks the Court to review the propriety of the EEOC's determinations, it does so against unambiguous Seventh Circuit precedent: "The existence of probable cause to sue is generally… not judicially reviewable." *EEOC v. Caterpillar, Inc.*, 409 F.3d 831, 833 (7th Cir. 2005).

Moreover, MMI did not request information about the class members. And there is no requirement that the EEOC mention all, or any, class members by name during conciliation. *See EEOC v. Rhone-Poulenc, Inc.*, 677 F. Supp. 264, 266 (D.N.J. 1988), affirmed by *EEOC v. Rhone-Poulenc, Inc.*, 876 F.2d 16 (3d Cir. 1989) ("The EEOC is not required to provide

documentation of individual attempts to conciliate on behalf of each potential claimant.")  In *Dial*, the EEOC and the defendant did not discuss monetary relief for any class members other than the charging party.  *Dial* at 941.  In *EEOC v. Cone Solvents, Inc.*, the defendant argued that the EEOC could not seek relief for class members other than the charging party because it had not indicated during conciliation that it was seeking relief for anyone other than the charging party and because its proposed Conciliation Agreement did not contain reference to class members other than the charging party.  *EEOC v. Cone Solvents*, *Inc.*, No. 3:04-0841, 2006 WL 1083406 (M.D. Tenn. Apr. 21, 2006) at *6.  The court held that the EEOC had permissibly broadened the scope of the initial charge because all charges were based on hostile environment sexual harassment and class members had described similar incidents of touching and sexual comments and because the initial charge mentioned that other women were being harassed too.  *Id.* at *7.

> Similarly, a number of district courts have held that the EEOC's failure during conciliation to identify every employee for whom it will seek relief in court is not a jurisdictional bar to a claim on behalf of those unidentified persons, provided that they are similarly situated to the named employees and the employer was on notice during conciliation of the potential of a class-based claim.

*EEOC v. Luihn Food Systems, Inc.*, No. 5:09-CV-387-D, 2011 WL 4747896 (E.D.N.C. Sep. 20, 2011) at *5, citing *EEOC v. Cal. Psychiatric Transitions, Inc.*, 644 F. Supp. 2d 1249 (E.D.Cal. 2009), *EEOC v. Thomas Dodge Corp.*, 524 F. Supp. 2d 227, and *Dial*.  Here, the EEOC's Letters of Determination all informed MMI of the potential for a class suit, EPFF, ¶ 3, and one of the charging parties, Lori Dunse, stated in her charge that her subordinate employees were also being harassed.  (EPFF, ¶ 51).

MMI had ample notice that employees other than the Plaintiff-Intervenors had suffered sexual harassment.  During the investigation, the EEOC obtained information from MMI

managers that at least two other employees, Kayla Thompson and Tylah Baetje, had complained about sexual harassment at the same restaurant.  Kayla Thompson put in a written complaint of sexual harassment.  (EPFF, ¶¶ 83-90).  So did Tylah Baetje.  (EPFF, ¶¶ 150, 151).  Katholeen Toeder complained to Shane Christianson that a co-worker grabbed her and another co-worker rubbed his crotch against her buttocks.  (EPFF, ¶¶ 57-59, 62-65).  Ms. Toeder also complained to Christianson that she had seen male co-workers grab the breasts of other female co-workers as well and asked him to stop them.  (EPFF, ¶ 61).  Ms. Toeder complained to Anna Helander that a co-worker had offered her money to perform a sexual act on him.  (EPFF, ¶¶ 68-72).  Margaret Warren complained to Christianson about an incident where two co-workers cornered her in the freezer while making comments about her breasts.  (EEOC's Response to Defendant Missoula Mac, Inc.'s Proposed Findings of Fact ("ERPFF"), ¶¶ 99-101).  Saphire Huffman complained to Christianson about sexual harassment too.  (EPFF, ¶¶ 80, 81).  And Cassandra Giese complained to the only manager present at the time about an incident where a co-worker cornered her in the employee lounge and tried to touch her.  (ERPFF, ¶¶ 74-80).

In addition, during conciliation the EEOC conveyed a proposal along with the fact that the EEOC had identified a fourth class member who had not filed a charge of discrimination.  (EPFF, ¶ 9).  MMI never responded to this proposal.  Nor did it ask anything about the fourth class member.  In effect, while claiming it was willing to conciliate, MMI refused to participate in the process.  All the flaws in the conciliation process MMI now points out stem from its refusal to participate.

### C. MMI Proposes an Erroneous Legal Standard

MMI argues that the Court should hold the EEOC failed to conciliate in good faith based on the standard articulated in *EEOC v. Asplundh Tree Expert Co.*, 340 F.3d 1256 (11th Cir.

2003).  But *Asplundh* does not apply here.  Courts are split regarding the proper standard for reviewing whether the EEOC has conciliated in good faith.  *See EEOC v. Alia Corp.*, No. 1:11-cv-01549 LJO BAM, 2012 WL 393510 (E.D.Cal. Feb. 6, 2012) at *9-10.  In *Alia*, the Eastern District of California thoroughly documented this split:

> The Second, Fifth, and Eleventh Circuits require courts to evaluate "the reasonableness and responsiveness of the EEOC's conduct under all the circumstances." *EEOC v. Asplundh Tree Expert Co.,* 340 F.3d 1256, 1259 (11th Cir.2003) (quoting *Klingler,* 636 F.2d at 107). Under this standard, the EEOC must at least: (1) outline to the employer the reasonable cause for its belief that a violation of the law has occurred; (2) offer an opportunity for voluntary compliance; and (3) respond in a reasonable and flexible manner to the reasonable attitudes of the employer. *Id.* (citing *Klingler,* 636 F.2d at 107). *See EEOC v. Johnson & Higgins, Inc.,* 91 F.3d 1529, 1534 (2d Cir.1996).
>
> The Sixth and Tenth Circuits, on the other hand, appear to have adopted a standard that is much more deferential to the EEOC. Under this standard, a court "should only determine whether the EEOC made an *attempt* at conciliation. The form and the substance of those conciliations is within the discretion of the EEOC ... and is beyond judicial review." *Keco,* 748 F.2d at 1102 (emphasis added). *See also Zia,* 582 F.2d at 533 ("[W]e agree that a court should not examine the details of the offers and counteroffers between the parties, nor impose its [own] notions of what the agreement should provide[.]").
>
> The Ninth Circuit has not weighed-in on the issue. However, district courts in this circuit have generally tilted toward the approach taken by the Sixth and Tenth Circuits, affording the EEOC wide deference in discharging its duty to conciliate. *See EEOC v. Cal. Psychiatric Transitions, Inc.,* 644 F.Supp.2d 1249, 1273 (E.D.Cal.2009) (" *Cal. Psych. I* ") (applying the deferential standard expressed by the Sixth Circuit in *Keco* ); *U.S. EEOC v. Hometown Buffet, Inc.,* 481 F.Supp.2d 1110, 1113–14 (S.D.Cal.2007) (same); *EEOC v. Grimmway Enters., Inc.,* Case No. CV F 06–0561 LJO DLB, 2007 WL 1725660, at *6–7, 2007 U.S. Dist. LEXIS 45268, at *16–18 (E.D.Cal. June 12, 2007) (same); *EEOC v. Gold River Operating Corp.,* 2:04–cv–01349–LRL, 2007 WL 983853, at *4–6, 2007 U.S. Dist. LEXIS 24597, at *14–17 (D.Nev. Mar. 30, 2007) (same); *U.S. EEOC v. Lawry's Restaurants, Inc.,* Case No. CV 06–1963 DDP PLAx, 2006 WL 2085998, at *1, 2006 U.S. Dist. LEXIS 55859, at *3 (C.D.Cal. July 14, 2006) (same).
>
> This Court finds no reason to depart from the deferential approach taken by the district courts in the Ninth Circuit. Title VII, as a whole, affords the EEOC substantial deference in discharging its duties. *See Hometown Buffet,* 481 F.Supp.2d at 1113–14. In fact, an effort by the U.S. Senate in 1972 to require

judicial approval of EEOC settlement agreements was "soundly rejected." _EEOC v. Sears, Roebuck & Co.,_ 504 F.Supp. 241, 262 (N.D.Ill.1980) (citing 118 Cong. Rec. 3807 (Feb. 14, 1972)). Therefore, in evaluating the sufficiency of the EEOC's conciliation efforts in this case, the Court will defer to the judgment of the EEOC and confine its inquiry to whether the EEOC "made an _attempt_ at conciliation." _Keco,_ 748 F.2d at 1102 (emphasis added). So long as Alia was given "an opportunity to respond to all [the] charges and [to] negotiate settlement[ ]," the EEOC fulfilled its statutory duty to conciliate in good faith. _EEOC v. Prudential Federal Sav. & Loan Assoc.,_ 763 F.2d 1166, 1169 (10th Cir.1985) (citation omitted).

_Id._ at *9-10.

Like the Ninth Circuit, the Seventh Circuit has not weighed in on the split.  But, while it has not explicitly adopted either standard, its district courts have consistently applied the Sixth and Tenth Circuits' more deferential standard.  _See_, e.g., _Dial_ at 940, citing _EEOC v. Keco Industries, Inc._, 748 F.2d 1097 (6th Cir. 1984) (The form and substance of the EEOC's conciliation proposals are "immune from judicial second-guessing."); _Menard_ at *1, citing _Keco_ and _EEOC v. Zia Co._, 582 F.2d 527 (10th Cir, 1978) (same); and _EEOC v.  Jillian's of Indianapolis, IN, Inc._, 279 F. Supp. 2d 974, citing _Dial_ (same).  Moreover, the Seventh Circuit itself has applied the more deferential standard at least once.  _EEOC. v. Elgin Teachers Ass'n_, 27 F.3d 292, 294, citing _EEOC v. Keco Industries, Inc.,_ 748 F.2d 1097, 1102 (6th Cir. 1984) (refusing to second-guess the EEOC's decisions during conciliation).  Moreover, research revealed that neither the Seventh Circuit nor any court within it has ever applied _Asplundh_ over the more deferential standard in _Keco_ and _Zia_.[1]

And even if the Court applies _Asplundh_, the EEOC met all its requirements.  In its three letters of determination, the EEOC outlined its reasonable cause for its belief that MMI has

---

[1] Beyond its erroneous use as the standard for good faith in conciliation, MMI employs _Asplundh_ to veil _ad hominem_ attacks on the EEOC's motives for filing this suit.  To wit, it claims the EEOC included class members beyond the Plaintiff-Intervenors here out of a desire to advance lurid, perhaps newsworthy, allegations.  The EEOC denies the allegation.

violated Title VII.  It invited MMI to conciliate, thus providing an opportunity for voluntary compliance.  (EPFF, ¶¶ 3, 4).  And it would have responded in a reasonable and flexible manner to MMI's reasonable attitudes.  But MMI foreclosed this possibility by refusing to provide a conciliation proposal. At a minimum, the EEOC made clear the basis of its charges against MMI. Its Letters of Determination announced that it had investigated the three charges and found reasonable cause to believe them as well as reasonable cause to believe similarly situated women had suffered sexual harassment as well.

### D. *CRST* Contravenes Seventh Circuit Precedent

MMI also cited *EEOC v. CRST Van Expedited, Inc.*, No. 09-3764, 2012 WL 555510 (8th Cir. Feb. 22, 2012) for the principle that absent an investigation and reasonable cause determination apprising the employer of the charges lodged against it, the employer has no meaningful opportunity to conciliate.  *CRST* does not apply here for two reasons.  First, to the extent *CRST* compels courts to review the adequacy of EEOC investigations vis-à-vis EEOC lawsuits, it directly conflicts with the Seventh Circuit's ruling in *EEOC v. Caterpillar, Inc.*, 409 F.3d 831, 833 (7th Cir. 2005):

> If courts may not limit a suit by the EEOC to claims made in the administrative charge, they likewise have no business limiting the suit to claims that the court finds to be supported by the evidence obtained in the Commission's investigation. The existence of probable cause to sue is generally… not judicially reviewable.

Second, to the extent *CRST* creates a new requirement that the EEOC conciliate on behalf of each class member individually, it conflicts with Sixth and Tenth Circuit precedent, discussed above, which holds that the courts shall not second-guess the form and substance of the EEOC's conciliation proposals.  *CRST* at 29 (Murphy, J., dissenting), citing *Keco*.  For these reasons, the Court should not apply *CRST* here.

In sum, MMI essentially invites the Court to second-guess the substance of the EEOC's conciliation process because it did not like the process. Because the Seventh Circuit has only looked at the EEOC's conciliation decisions with deference, the Court should deny MMI's motion.

### E. The Proper Remedy for Failure to Conciliate in Good Faith is Stay, Not Dismissal

Finally, should the Court find that the EEOC failed to meet its duty to conciliate in good faith, the EEOC respectfully requests that, rather than dismiss the case, the Court stay proceedings and order the parties to conciliate. MMI's argument is predicated on its willingness to conciliate. Indeed, the parties have been making ongoing attempts at resolving this case through a mediator. Dismissal represents too harsh a sanction, especially here, where the parties are still trying to resolve the matter. *See EEOC v. High Speed Enterprise, Inc.*, No. CV-08-01789-PHX-ROS, 2010 WL 8367452, at *6 (D. Ariz. Sep. 30, 2010) (When the EEOC fails to satisfy its statutory obligation to conciliate in good faith, the court has sound discretion to stay the matter or dismiss it, but the court found dismissal too harsh a remedy.) and *EEOC v. Crye-Leike, Inc.*, 800 F. Supp. 2d 1009, 1018 (E.D.Ark. 2011) ("When a Court determines that the EEOC has attempted conciliation, but has not done so in good faith, the Court may stay the proceedings for conciliation efforts to resume.")

### III.   The Pervasive Sexual Harassment Condoned by MMI Constituted a Hostile Work Environment

MMI argues in Section III of its Motion and Brief that the Court should dismiss the EEOC's claims on behalf of three class members (Darla Erbs, Vanessa Bennett, and Stephanie

Reilly) because they have failed to appear for deposition.  The EEOC does not oppose MMI's motion as to these three class members.

In addition, MMI argues that the Court should dismiss the EEOC's claims on behalf of five class members, former MMI employees Liberty Stanford, Tylah Baetje, Cassandra Giese, Lacey Stanclift, and Margaret Warren, because the conduct they complained of was not severe or pervasive enough, from an objective standpoint, to create a hostile work environment, because MMI took prompt remedial action and the conduct did not recur, or for a combination of both reasons.  MMI argues with tunnel vision as to each class member.  This suggested approach could not stray farther from precedent on how to determine the objective component of a hostile work environment claim.

On the contrary, the Court must take into account all allegations of sexual harassment in determining whether an objective hostile work environment existed.  Because a hostile work environment claim is comprised of a series of separate acts that collectively constitute one unlawful employment practice, courts must not carve up the incidents of harassment to see if each incident rises to the level of being severe or pervasive.  *Mangano v. Sheahan*, No. 00 C 3953, 2002 WL 1821738, at *8 (N.D.Ill. Aug. 7, 2002), citing *Mason v. Southern Illinois University at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000) and *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999).  Here, the evidence reveals at least twelve victims, many of whom were physically assaulted and/or threatened over a period lasting from 2006 until at least 2010, during which time no complaints were investigated nor disciplinary action taken against the harassers.  Several of the victims were teenagers; Lacey Stanclift was only fourteen at the time she was asked for her phone number by the co-worker who was in his 30's.  (EPFF, ¶ 158).

Nor should the Court draw MMI's desired bright-line rule, which would discard all sexual harassment claims not including touching.  MMI Brief at 9, citing *Turner v. The Saloon, Ltd.* ("[p]erhaps the most heavily emphasized factor in our cases is whether there was inappropriate touching.")  Again, MMI's suggested analytical standard departs from precedent unjustifiably.  *Valentine v. City of Chicago*, 452 F.3d 670, 681 (7th Cir. 2006) (There is no bright-line test for determining when a workplace becomes objectively hostile.).  To determine whether conduct is severe or pervasive enough to create a hostile or abusive work environment, a court must consider the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Cerros v. Steel Technologies, Inc.*, 288 F.3d 1040, 1046 (7th Cir. 2002), quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).

Severity and pervasiveness are, to a certain degree, inversely related; a sufficiently severe episode may occur as rarely as once, while a relentless pattern of lesser harassment that extends over a long period of time also violates the statute.  *Id.*, citing *Smith v. Sheahan*, 189 F.3d 529, 533-534 (7th Cir. 1999).  There is no "magic number" of offensive words that indicate a hostile work environment.  *See id.*  In the case of discriminatory statements, courts must assess the frequency of their use, as well as whether the remarks were stated directly to the person harassed or whether the person harassed heard them secondhand.  *Valentine*, 452 F.3d at 681, quoting *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 271 (7th Cir. 2004)**;** *EEOC v. Management Hospitality of Racine,* 666 F. 3d 422, 432-433 (7th Cir. 2012)(harasser engaged in sexually harassing conduct during every shift; "In any event, to prevail [plaintiff] need not show that the conduct complained of was both severe *and* pervasive.") (emphasis in original).

Here, Cassandra Giese heard sexual jokes and comments in the Reedsburg restaurant, which Jorge would initiate all the time, at least once per every shift she worked.  (EPFF, ¶¶ 172-174).  Katholeen Toeder, who worked with both Jorge and Cesar, testified that, on a scale of 1 to 10, the level of sexual jokes and comments in the Reedsburg restaurant was a 10.  (EPFF, ¶ 55).  Jorge admitted making comments about co-workers' breasts and butts, and Cesar's self-serving denials should not fare much better.  (EPFF, ¶¶ 195, 197).  These constant jokes and comments violate MMI's sexual harassment policies, and the Court should hold they created an objectively hostile work environment.  *See Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 811 (11th Cir. 2010), citing *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331-332 (4th Cir. 2003) (Words and conduct that are sufficiently gender-specific and either severe or pervasive may state a claim of a hostile work environment, even if the words are not directed specifically at the harassed employee.)

Moreover, these pervasive sexual jokes and comments were out there for everyone to hear, and, consequently, they affected everyone's work environment.  MMI may argue some class members could not understand the jokes, which were in Spanish.  But Tylah Baetje understood them.  (EPFF, ¶¶ 144, 150; ERPFF, ¶ 51).  So did Cassandra Giese.  (EPFF, ¶¶ 172-175).  Even Liberty Stanford, who did not understand Spanish, perceived the hostility that these jokes and comments engendered and suffered just the same for it.  (EPFF, ¶ 144).  In *Valentine v. City of Chicago*, the Seventh Circuit weighed four factors to determine severity or pervasiveness of workplace conduct in a sexual harassment case: frequency, severity, whether the conduct was humiliating, and whether the conduct interfered unreasonably with work performance.  *Valentine*, 452 F.3d at 681, quoting *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 975-976 (7th Cir. 2004).

Here, as in *Valentine*, sexual conduct occurred every day.  (EPFF, ¶ 174).  This factor should weigh for finding an objectively hostile work environment.  In weighing severity, *Valentine* considered whether the sexual conduct was directed at the harassed employee.  Here, as in *Valentine*, the conduct was directed at the class members.  Cassandra Giese heard sexual jokes and comments about "the girls up front" and was cornered in the employee lounge.  (EPFF, ¶¶ 172-174).  Tylah Baetje endured comments about her breasts and butt; once, Cesar touched her butt at work.  (EPFF, ¶ 150. ERPFF, ¶¶ 52-54, 57, 59, 64, 67).  Few could disagree with Lacey Stanclift's visceral reaction when a co-worker in his 30s asked her for her phone number; she was fourteen at the time.  (EPFF, ¶ 158).  Margaret Warren had to ask for a transfer to escape harassment that continued even after she complained.  (ERPFF, ¶¶ 97-108).  Even Liberty Stanford suffered for believing, rightly, that her work environment should have been free of "sexual name-calling."  (EPFF, ¶¶ 139-141).

Certainly, daily comments and jokes about breasts and butts should be considered humiliating. And finally, the harassing conduct interfered with class members' work environment.  Margaret Warren had to ask for a transfer.  (ERPFF, ¶¶ 97-108).  Tylah Baetje's mother had to get involved to make sure harassment stopped, and yet it still continued even after she changed shifts.  (EPFF, ¶¶ 150-157; ERPFF, ¶¶ 52-71).  Cassandra Giese had to quit because her hours dried up after she complained of sexual harassment.  (EPFF, ¶¶ 160-165).  Liberty Stanford did not think anyone would take her seriously.  (EPFF, ¶ 137).  And Lacey Stanclift only lasted a few months on the job.  (ERPFF, ¶ 89).

Furthermore, MMI's willful ignorance of numerous sexual harassment complaints compounded the hostility in that it sent a clear message to those who would complain.  It emboldened harassers and disempowered female employees who had to choose between sexual

harassment and ostracism.  An employer is liable for a hostile work environment created by a harassed employee's co-workers only when the employer has been negligent either in discovering or remedying the harassment.  *Mason*, 233 F.3d at 1043, citing *Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998).

Here, MMI employees had been complaining since 2006 about sexual harassment by Jorge Ruiz.  Kayla Thompson complained about him in 2006.  (EPFF, ¶ 83).  MyLinda Brown complained about him in 2006.  He would make sexual jokes and comments every day.  (EPFF, ¶ 174).  And yet he left MMI, of his own accord, in 2011.  (EPFF, ¶ 196).  Cesar Duran Santiago started accumulating sexual harassment complaints almost since the moment he started working in Reedsburg in 2007.  (ERPFF, ¶¶ 34-41).  He was fired from Reedsburg but re-hired in Lake Delton, where he harassed another co-worker.  (EPFF, ¶¶ 193, 194, 94-106).

The Court should find that Jorge's and Cesar's harassing conduct, in which they engaged every day, was pervasive enough to render the work environment at the Reedsburg restaurant objectively hostile.  This conduct included sexual jokes, comments about female co-workers' body parts, and other sexual comments, all of which would affect anyone working within earshot.  Thus, because it must consider the totality of the circumstances when determining whether a working environment is objectively hostile, the Court should hold that the working environment was objectively hostile for those class members who worked during the same times as Jorge or Cesar.

**IV.    EEOC Does Not Assert a Pattern or Practice Claim, But Rather a Hostile Work Environment Claim Requiring Injunctive Relief**

MMI argues in Section IV of its Motion and Brief that the Court should dismiss the EEOC's pattern or practice claim.  It correctly notes that the phrase is not used in the EEOC's complaint.  While the EEOC clearly has authority to bring pattern or practice claims under Section 706 of Title VII 42 U.S.C. § 2000e-5, *see, EEOC v. General Telephone,* 446 U.S. 318, 324 (1980)  (EEOC has authority to bring pattern or practice claim pursuant to Section 706 seeking back pay and injunctive relief without regard to the requirements of Rule 23 of the Federal Rules of Civil Procedure); *EEOC v. International Profit Associates, Inc.,* 2007 WL 3120069 *2 (N.D. Ill. 2007)(same), it has not done so in this case.[2]  The EEOC has the authority to do what it has done here: bring a hostile environment sexual harassment claim on behalf of a group of victims pursuant to Section 706.  *In re: Bemis,* 279 F.3d 419 (7th Cir. 2002). MMI's Motion with respect to the purported pattern or practice claims should be denied as moot.

MMI's motion also argues, however, that its practices are appropriate and do not warrant injunctive relief:  "At all times material to this case, MMI had policies in place that prohibited sexual harassment."  MMI Brief, p. 20.  The EEOC does not dispute that MMI has written policies prohibiting sexual harassment, requiring investigation of complaints of sexual harassment, and providing for discipline of harassers. (ERPFF, ¶¶ 138, 139.)  These policies are not worth the paper they were written on.  For example, MMI has policies requiring managers to retain all sexual harassment complaints.  (EPFF, ¶ 204).  But the managers are also responsible for reporting their own violations of the policy.  (EPFF, ¶ 205).  Not surprisingly, managers like Shane Christianson and Jeff Lurvey have done more to avoid liability for MMI than to correct and prevent sexual harassment.  This, in turn, enables the kind of circular, self-serving denial

---

[2] The EEOC's complaint does reference Section 707 of Title VII, 42 US.C. § 2000e-6, which explicitly authorizes EEOC to bring "pattern or practice" claims, as well as Section 706, 42 U.S.C. § 2000e-5, in Paragraphs 1 and 3, which allege EEOC's statutory authority to bring the case.  The references to Section 707 are surplusage, and EEOC apologizes for any confusion the reference may have caused.

Duran Santiago proclaimed at his deposition: "I mean, it couldn't be possible. You know, they'd saying if I had done this, they wouldn't allow me to still work there. I mean, there are probably like five or six woman that are accusing me here." (EPFF, ¶¶ 195).

The record here shows a hostile environment of sexual harassment created by male employees Cesar Duran Santiago, Jorge Ruiz, and others; condoned by supervisors, ignored by the store managers, Mark Parkhurst and Shane Christianson, who were responsible for preventing such an environment, and allowed by upper management at MMI.  The harassment was directed toward at least eleven victims on a daily basis over a two-year period at the Reedsburg store, and continued through 2010, when Duran Santiago harassed a female employee at the Lake Delton restaurant.  Despite at least twenty-four complaints described in the record, written complaints were destroyed; no investigations were conducted, and no disciplinary action was ever taken against any of the harassers.  (EPFF, ¶¶ 38-42, 46, 51-52, 58-65, 70-72, 78, 81, 87, 109, 135, 136, 151-152, 167-170, 175-179, 183-184, 186-187, 190, 192; ERPFF ¶¶ 74, 88, 97, 102).  Worse yet, management personnel retaliated against employees who complained of sexual harassment.  (EPFF, ¶¶ 110-114, 127-131).

Written policies that are not implemented do not protect an employer against liability for sexual harassment.  *EEOC v. Management Hospitality of Racine,* 666 F. 3d 422, 435 (7th Cir. 2012).  Prompt investigations of harassment complaints are the hallmark of reasonable corrective action.  *Id.* at 436*, citing Cerros v. Steel Tech., Inc.,* 398 F.3d 944, 954 (7th Cir. 2005).  As in *Management Hospitality*, a jury could reasonably find that, despite its written policies, the practices of MMI contributed to, rather than prevented, the hostile environment alleged by the EEOC.

MMI's argument that EEOC is not entitled to injunctive relief is premature.  Section 2006 provides that a court may award injunctive relief when it finds that the defendant "intentionally engaged in or is intentionally engaging in an unlawful employment practice."  42 U.S.C. § 2000e-5(g)(1).  "The section of Title VII authorizing injunctive relief does not itself require that a pattern or practice of unlawful conduct be shown; instead, injunctive relief is authorized once the court has found that the defendant intentionally engaged in an unlawful employment practice."  *EEOC v. Ilona of Hungary, Inc.,* 108 F.3d 1569, 1578 (7th Cir. 1997).  The facts that the victims and some of the wrongdoers are no longer employed by a defendant, or that the proved discrimination has ceased, are not, by themselves, reason to deny injunctive *EEOC v. Management Hospitality of Racine, Inc.,* 780 F. Supp. 2d 802, 823-24 (E.D. Wis.2010); *rev'd on other grounds,* 666 F. 3d 422, 443 (7th Cir. 2012).

MMI has presented no evidence that it has changed its practices with respect to preventing sexual harassment.  On the contrary, the evidence suggests that MMI has carried on with its discriminatory and retaliatory practices.  In 2007, Tylah Baetje submitted a written sexual harassment complaint which Shane Christianson, against MMI policy, discarded or destroyed.   When MMI found out about Christianson's breach, it did not discipline him.  Instead of disciplining Baetje's harasser, Christianson changed her shift.  Not surprisingly, she was harassed by a different co-worker in her new shift.  And yet, Christianson was promoted.  In 2008, Chris Tourdot reduced Cassandra Giese's hours to almost nothing after she complained of sexual harassment, forcing her to quit.  Margaret Warren had to request a transfer to get away from her harassers.

And in 2010, Nicole Dyke did not complain about sexual harassment because she feared retaliation.  (EPFF, ¶¶ 108, 109, 114).  In the end, she had to complain to defend herself from

rumors and accusations.    (EPFF, ¶¶ 114-117).  Once she complained, as she had feared, and been warned, almost the entire Lake Delton management team ostracized her in retaliation, despite the management meeting MMI held to review its harassment and retaliation policies. (EPFF, ¶¶ 110-114, 127-131).

The purchaser of the Reedsburg store is a successor, *see,* EEOC Motion for Leave to File Amended Complaint, filed April 3, 2012, and ERPFF, ¶ 131, and it has retained the employees of MMI who tolerated the harassment between 2006 and 2008.  That harassment continued unabated at the Lake Delton store when MMI rehired Cesar Santiago despite his history of complaints of sexual harassment, resulting in the sexual harassment of Nicole Dyke.  Following trial of the case, EEOC will request injunctive relief to remedy the unlawful practices which have existed at MMI's Reedsburg store, and throughout the company.

## <u>CONCLUSION</u>

For the foregoing reasons, the Plaintiffs and EEOC respectfully request that this Court deny MMI's motion for partial summary judgment.

John C. Hendrickson
Regional Attorney

Jean P. Kamp
Associate Regional Attorney

EQUAL EMPLOYMENT OPPORTUNITY
    COMMISSION
Chicago District Office
500 West Madison Street - Suite 2000
Chicago, IL  60661
*Telephone*:   (312) 869-8116
*E-mail*:       john.hendrickson@eeoc.gov
*E-mail*:       jean.kamp@eeoc.gov

Dated:  April 3, 2012                    s/ César J. del Peral_____
                                         César J. del Peral
                                         Trial Attorney

                                         EQUAL EMPLOYMENT OPPORTUNITY
                                              COMMISSION
                                         Milwaukee Area Office
                                         310 West Wisconsin Avenue - Suite 800
                                         Milwaukee, WI  53203-2292
                                         *Telephone*:  (414) 297-1114    *Fax*:  (414) 297-3146
                                         *E-mail*:      cesar.delperal@eeoc.gov